**UNITED STATES of America, Appellee,**

v.

**Allen Robert LUBLIN, Appellant.**

**No. 92–2453.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1992.

Decided Dec. 11, 1992.

368

Virginia Villa, Minneapolis, MN, argued, for appellant.

Andrew Stephen Dunne, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before McMILLIAN, MAGILL, and HANSEN, Circuit Judges.

MAGILL, Circuit Judge.

Allen Robert Lublin appeals from a sentence of imprisonment and supervised release for three counts of using a false social security number. He claims the dis-

trict court[1] erred by (1) refusing to grant an acceptance of responsibility reduction; (2) adding two points for more than minimal planning; and (3) determining that two prior convictions were not related offenses for purposes of calculating his criminal history score. We affirm.

## I. BACKGROUND

On April 22, 1991, Lublin, using the alias Allen Marx, withdrew money in the form of a bank check from an account at the Santa Monica Consumer's Credit Union in California. He took this check to the Santa Monica Bank and received three separate cashier's checks in the amounts of $9,900; $9,900; and $9,900.36. On May 5, Lublin moved to Rochester, Minnesota, and rented an apartment under the alias Allen Nash. He listed an address in Torrance, California, as his last residence, and gave a false social security number. On June 3, Lublin rented a post office box at the Austin, Minnesota, post office under the alias Allen Marx. He listed his home address as Seaford, New York.

Also on June 3, Lublin, using the alias Allen Marx, opened accounts jointly with Evelyn Yigdall by purchasing six-month certificates of deposit (CDs) at three different banks in Albert Lea, Minnesota, using the cashier's checks from the Santa Monica Bank. He used a false California driver's license as identification and gave the same false social security number at each of the banks. He also gave the banks a local street address in Austin, Minnesota, which listed to the post office box in Austin.

On June 11, Lublin rented a safety deposit box at the Eastwood Bank in Rochester, Minnesota, under the alias Allen Nash. Lublin returned to the Albert Lea banks several times, attempting to remove Evelyn Yigdall's name from the accounts. On each trip, Lublin represented himself as Allen Marx. He also completed and filed IRS W–9 tax forms under the alias Allen Marx, using the false social security number.

Lublin returned to the banks to close the accounts on December 3. He received the money from each bank in a combination of cash and cashier's checks payable to Allen Marx. After closing the accounts, Lublin went to Austin to close the post office box. When he left the post office, he was stopped by Austin police. Lublin consented to a search of his vehicle, which revealed large amounts of cash and checks, and two California driver's licenses in the names of Allen Lublin and Allen Marx. Lublin also had in his possession typed instructions pertaining to cashing the CDs, how to structure the transactions to avoid detection, and how to answer if a teller asked for his social security card. Austin police took Lublin into custody. On December 4, Rochester police searched Lublin's apartment. This search revealed several types of identification in the names of Allen Nash, Allen Marx, and Paul Allen; typed instructions regarding money and insurance transactions; and a telephone tap detector.

In January 1992, a federal grand jury returned an indictment charging Lublin with three counts of using a false social security number and one count of structuring financial transactions to evade federal financial reporting requirements. While Lublin was still in federal custody, the State of California brought criminal charges and extradition proceedings against Lublin. California authorities also were investigating Lublin in connection with insurance fraud.

Lublin pled guilty in federal district court to three counts of using a false social security number in violation of 42 U.S.C. § 408(g)(2). The government agreed to dismiss the structuring count. Lublin received concurrent sentences of twelve months of imprisonment and three years of supervised release for each of the three counts to which he pled guilty. He appeals from this sentence.

---

1. The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota.

## II. ACCEPTANCE OF RESPONSIBILITY

Lublin argues the district court erred when it refused to grant him a two-level reduction for acceptance of responsibility. He asserts the court denied the reduction because he refused to answer certain questions during the presentence investigation. Lublin claims he refused to answer these questions because the answers may have incriminated him in the California criminal proceedings. He claims the court thus violated his Fifth Amendment privilege against self-incrimination. We disagree.

■ A district court has discretion to reduce a defendant's offense level by two levels if the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a) (Nov. 1991). This court will reverse a district court's decision whether to grant a reduction for acceptance of responsibility only for clear error. *United States v. Laird*, 948 F.2d 444, 447 (8th Cir.1991). The burden of proof is on the defendant to demonstrate acceptance of responsibility for the criminal conduct. *See* U.S.S.G. § 3E1.1(a) (Nov. 1991).

We have held in the past that § 3E1.1 does not facially violate the Fifth Amendment. *United States v. Lyles*, 946 F.2d 78, 81–82 (8th Cir.1991). On the record before us, we do not need to reach the question of whether conditioning the acceptance of responsibility reduction on a defendant answering questions regarding potentially incriminating conduct violates the Fifth Amendment. We find the record clearly supports a foundation for denying the reduction on other grounds.

■ Lublin argues that the amended version of § 3E1.1, which went into effect November 1, 1992, demonstrates that the Sentencing Commission intended the reduction to be granted whenever a defendant admits to the elements of the offense. Under both the 1991 version and the amended version, however, "[a] defendant who enters a guilty plea is not entitled to an adjustment ... as a matter of right." U.S.S.G. § 3E1.1, comment. (n. 3) (Nov. 1992); U.S.S.G. § 3E1.1(c) (Nov. 1991); *see United States v. Evidente*, 894 F.2d 1000, 1003 (8th Cir.), *cert. denied*, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). Whether a defendant has accepted responsibility is a factual question, and largely is dependent on a credibility assessment by the sentencing judge. *Evidente*, 894 F.2d at 1003. We give great deference to the district court's determination because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n. 5) (Nov. 1991); *see United States v. Big Crow*, 898 F.2d 1326, 1330 (8th Cir. 1990).

■ The district court stated Lublin was not sincere in accepting responsibility for his crime. It stated Lublin's attitude was that of having been caught on a technicality, and not that he "did wrong" and deserved punishment. The district court's credibility assessment is further supported by the probation officer's assessment in the presentence report. The probation officer noted Lublin did not give any believable indication he had accepted responsibility for his offense, and his statements that he wanted to express his remorse were less than sincere. Additionally, Lublin was not truthful with the probation officer during the presentence investigation, he did not voluntarily withdraw from the offense, *see* U.S.S.G. § 3E1.1, comment. (n. 1(a)) (Nov. 1991), and he did not assist authorities during investigation of the offense, *see id.* (n. 1(e)). The district court's denial of the reduction for acceptance of responsibility was not clearly erroneous.

## III. MINIMAL PLANNING

■ Lublin next claims the district court erred by adding two points for more than minimal planning under U.S.S.G. § 2F1.1(b)(2)(A). Whether Lublin engaged in more than minimal planning is a factual finding, and this court reviews the district court's determination only for clear error. *United States v. Coney*, 949 F.2d 966, 968 (8th Cir.1991).

Lublin argues that his offense of using a false social security number did not involve more than minimal planning because he did not use a forged social security document and his action of giving the number to the banks took place all in one day. We disagree. Lublin had detailed written instructions about how to conceal his identity at the various banks, how to structure the transactions so as to avoid detection, and what answer to give if a teller asked for his social security card. The district court concluded that these written instructions demonstrated that Lublin had not just "throw[n] out a number when [he] got to the bank." He planned what he was going to do and took significant affirmative steps to conceal the crime. *See* U.S.S.G. § 1B1.1, comment. (n. 1(f)) (Nov. 1991). The district court's finding that Lublin engaged in more than minimal planning was not clearly erroneous.

## IV. CRIMINAL HISTORY

Finally, Lublin contends that the district court erred in calculating his criminal history score because it determined that two prior convictions were not related under U.S.S.G. § 4A1.2(a)(2) (Nov. 1991). One of the prior convictions in question involved the federal crime of unlawful transportation of firearms. From August 20, 1976, to September 20, 1976, Lublin had sold an undercover agent fourteen handguns and several rounds of ammunition. He had purchased the weapons in southeastern states using false identification, and was arrested in New York. The other prior conviction involved the New York state crimes of forgery, grand larceny, and possession of stolen property. Lublin had a stolen automobile in his possession on July 23, 1976. He also changed the vehicle identification number and registration transfer stub, and sold the automobile to another person.

Prior convictions are related if they "(1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, comment. (n. 3) (Nov. 1991). Lublin concedes that these offenses did not occur on the same occasion, and were not consolidated for trial or sentencing. He claims, however, that they were part of a single common scheme or plan. He argues that because he stole the automobile to transport the handguns, the crimes were related. He contends the district court erred by not considering the factual underpinnings of the crimes. We disagree. The record shows that Lublin presented the district court with the facts which he believed demonstrated the convictions were related. The district court did not accept Lublin's interpretation, and stated that it agreed with the presentence investigation which treated the convictions as separate.

The district court's determination is a factual one, and we review it for clear error. *United States v. Lowe,* 930 F.2d 645, 646–47 (8th Cir.1991). We hold that the district court's finding was not clearly erroneous. Even if Lublin did steal the automobile to transport the handguns, this fact by itself does not make the convictions related. *Cf. id.* at 647–48 (stating motive and modus operandi are not dispositive when determining whether prior convictions are related). In addition to stealing the automobile, Lublin changed the vehicle identification number and registration transfer stub, and sold the automobile to another person. Lublin's federal and state offenses occurred on different dates, were factually distinct, and involved selling the handguns and the automobile to different people. *Cf. id.* at 647–48 (upholding determination of unrelatedness because offenses occurred at different times, involved different victims, had been committed in different locales, and had not been consolidated).

## V. CONCLUSION

We find that the district court's determinations were not clearly erroneous. Accordingly, we affirm.