# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3180

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | South Dakota. |
| Orville Marrowbone, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 15, 2000

Filed: April 27, 2000

_____

Before BEAM and JOHN R. GIBSON, Circuit Judges, and PRATT,[1] District Judge.

_____

BEAM, Circuit Judge.

Orville Marrowbone appeals his conviction for having sex with a person who was incapable of declining participation in or communicating an unwillingness to engage in sex. See 18 U.S.C. §§ 1153, 2242(2)(B), 2246(2)(A). We affirm.

Orville Marrowbone had sex with L.D., a sixteen-year-old, on the Cheyenne River Indian Reservation. At trial, L.D. testified that he got drunk on alcohol supplied

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

by Marrowbone, passed out, and awoke to Marrowbone engaging in anal sex with him. Soon after this encounter, L.D. ran home and told his mother what happened. His mother called the tribal police to have L.D. arrested for unlawful intoxication. The police did not respond. About two hours later, L.D.'s mother again called the police to have him arrested for unlawful intoxication. Officer Donel Henry Takes the Gun then arrived and arrested L.D. Officer Takes the Gun later transferred L.D. to the custody of Officer Harlen E. Gunville, Jr.

While in the police officers' custody, L.D. made statements about his encounter with Marrowbone. Officer Takes the Gun testified that L.D. said Marrowbone had molested him. Officer Gunville testified that L.D. said he was ashamed and did not feel like a man anymore. Officer Gunville also testified that L.D. said "[t]hat fucker, he gave me some drinks, he got me drunk, and I passed out" and "when I woke up, he's doing that pen shit to me."

Marrowbone objected on hearsay grounds to the police officers' testimony about L.D.'s statements. The district court overruled the objections, and allowed the testimony without any limiting instructions. On appeal, Marrowbone renews his hearsay objection to the admission of this testimony from the officers. The government asserts the excited utterance exception to the hearsay rule allows for admission of this evidence.

Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. See Fed. R. Evid. 801. Hearsay is generally not admissible, but there is an exception for excited utterances. See Fed. R. Evid. 802 and 803(2). Excited utterances are statements relating to a startling event made while under the stress of excitement caused by the event. See Fed. R. Evid. 803(2). The rationale for this exception is that excited utterances are likely to be truthful because the stress from the event caused a spontaneous statement that was not the product of reflection and deliberation. See Reed v. Thalacker, 198 F.3d 1058, 1061 (8th Cir. 1999).

To determine whether L.D. was under the stress of excitement when he made these statements, we consider the lapse of time between the startling event and the statements, whether the statements were made in response to an inquiry, his age, the characteristics of the event, his physical and mental condition, and the subject matter of the statements. See United States v. Moses, 15 F.3d 774, 777-78 (8th Cir. 1994). The government has the burden of demonstrating that the excited utterance exception is applicable. See Reed, 198 F.3d at 1061. We review the district court's evidentiary ruling for abuse of discretion. See United States v. Phelps, 168 F.3d 1048, 1054 (8th Cir. 1999).

These statements do not qualify as excited utterances. The allegations of sexual abuse were made about three hours after the event occurred. In addition, these statements were made by a teenager, not by a small child. See Reed, 198 F.3d at 1061-62 (recognizing that some courts allow a longer time period between the event and the statement when a young child alleges sexual abuse). While small children may be less likely to fabricate a story, teenagers have an acute ability to deliberate and fabricate. This particular teenager also had reason to fabricate because making a charge of molestation might enable him to avoid a night in jail for being intoxicated. See Stidum v. Trickey, 881 F.2d 582, 585 (8th Cir. 1989) (finding an excited utterance because declarant had no reason to fabricate).

L.D.'s actions also do not show continuous excitement or stress from the time of the event until the time of the statements. See United States v. Moss, 544 F.2d 954, 958 (8th Cir. 1976) (showing of continuous unrelieved excitement after event provides evidence that statement was excited utterance). Officer Takes the Gun testified that when he arrived at the house, L.D. was standing with a group of people and, when handcuffed, said nothing about the incident with Marrowbone. It was only when L.D. was about to be placed in the patrol car for transport to jail that he raised a ruckus and began making these statements. Six other witnesses also testified that L.D. did not appear frightened or scared during the time after the encounter with Marrowbone.

-3-

Based on the lapse of time, age, motive to lie, and known actions of L.D., we are wholly unconvinced these statements were excited utterances. Thus, the district court abused its discretion when it admitted this hearsay evidence.

After determining this evidence was inadmissible, we now consider whether the admission of these statements was harmless error. See Fed. R. Crim. P. 52(a). An erroneous evidentiary ruling does not effect a substantial right and is harmless error if, after reviewing the entire record, we determine that the error did not influence or had only a slight influence on the verdict. See United States v. DeAngelo, 13 F.3d 1228, 1233 (8th Cir. 1994). In other words, we will reverse only if the jury may have been substantially swayed by the improperly admitted evidence. See id.

At the outset, we acknowledge that, at sentencing, the district court noted this was a close case. We also acknowledge L.D.'s credibility was an issue in the case because Marrowbone testified the sex was consensual, and that the officers' testimony may have helped bolster L.D.'s credibility. However, after reviewing the entire record, we conclude the admission of L.D.'s statements through the officers did not substantially sway the jury.

We reach this conclusion because the government was able to present similar hearsay evidence through L.D.'s mother and a nurse who examined L.D. after the incident. L.D.'s mother testified that after he ran home he said, "I'm scared, just send me away and put that man in jail and just send me far away." The nurse testified that L.D. told her that he had been drinking and awoke to Marrowbone having sex with him.[2] Thus, the officers' testimony was cumulative. See United States v. Balfany, 965 F.2d 575, 582 (8th Cir. 1992) (erroneous admission of hearsay statement through one

_____

[2]This hearsay testimony was admitted under the exception for statements made for the purpose of medical diagnosis or treatment. See Fed. R. Evid. 803(4). In this appeal, Marrowbone has not challenged the admission of this testimony.

witness was harmless error when similar hearsay statements were properly admitted through three other witnesses); cf. Reed, 198 F.3d at 1062-63 (erroneous admission of hearsay statements through two witnesses was not harmless error when similar hearsay statement was properly admitted through one other witness). Moreover, the jury heard testimony from several officers that L.D. was crying and upset. These observations alone bolstered L.D.'s credibility. With this other evidence, we are convinced the inadmissible hearsay evidence did not substantially sway the jury.

Marrowbone appeals the admission of testimony from Officer Jack Slides Off that L.D.'s mother made a complaint to police about Marrowbone's rape of her son. However, this is not hearsay because the district court admitted this statement as preliminary information concerning the origin of the investigation—not for the truth of the matter asserted. See United States v. Running Horse, 175 F.3d 635, 638 (8th Cir. 1999). In its closing argument, the government did not refer to this statement as evidence of the crime. See United States v. Cruz, 993 F.2d 164, 169 (8th Cir. 1993). Thus, admission of this evidence was not an abuse of discretion.

Marrowbone also argues the prosecutor used peremptory challenges in a racially discriminatory manner. See Batson v. Kentucky, 476 U.S. 79, 89 (1986). To prove a Batson violation, a defendant must first make a prima facie showing that the prosecution exercised its peremptory challenges based on race. See United States v. Jones, 195 F.3d 379, 381 (8th Cir. 1999). If this showing is made, the burden then shifts to the prosecution to give a racially neutral explanation for the challenges. See id. Finally, the defendant must meet his burden of proving purposeful discrimination. See id.

During jury selection, Marrowbone objected after the prosecutor used his first two peremptory challenges against Native Americans. The district court then asked the prosecutor to provide race-neutral explanations for the challenges. The prosecutor said he struck the first potential juror because of her lack of attentiveness, demeanor, and

-5-

the general manner in which she answered the questions. Nonetheless, the prosecutor offered to withdraw the first peremptory challenge. However, instead of accepting the prosecutor's offer, Marrowbone withdrew his <u>Batson</u> objection as to this potential juror.[3] The prosecutor then said he struck the second potential juror because she knew the defendant's mother. The district court accepted this explanation and overruled Marrowbone's <u>Batson</u> objection.

Marrowbone has not shown a <u>Batson</u> violation. For starters, Marrowbone withdrew his objection to the peremptory challenge of the first juror. Moreover, the record supports part of the prosecutor's race-neutral reasons for challenging the first potential juror because during questioning she said she had "too much going on at home" and would not be able to concentrate on the case. Inattentiveness and demeanor can be race-neutral reasons. <u>See</u> <u>United States v. Todd</u>, 963 F.2d 207, 211 (8th Cir. 1992). Finally, the prosecutor's explanation for the peremptory challenge of the second juror was legitimate and race-neutral. <u>See</u> <u>United States v. Iron Moccasin</u>, 878 F.2d 226, 229 (8th Cir. 1989) (acquaintance with defendant provides race-neutral reason). Thus, we reject Marrowbone's <u>Batson</u> claim.

Finally, Marrowbone argues for reversal of his conviction because of insufficient evidence and the use of leading questions by the prosecution. He also challenges the district court's admission of other hearsay evidence and its exclusion of evidence regarding Marrowbone's polygraph examination and L.D.'s sexual history. After reviewing these contentions, we find them to be without merit, and affirm without further discussion. <u>See</u> 8th Cir. R. 47B.

Affirmed.

---

[3]A colloquy between the district court and Marrowbone's defense counsel indicates the objection was withdrawn because the potential juror had expressed an unfavorable opinion about homosexual conduct

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.