# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1837/1934

_____

United States of America,    *
                             *
    Appellee/Cross-Appellant,    *
                             *    Appeals from the United States
v.                           *    District Court for the
                             *    District of South Dakota.
Tyler Water,                 *
                             *
    Appellant/Cross-Appellee.    *

_____

Submitted: November 15, 2004
Filed: July 11, 2005

_____

Before SMITH, LAY, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

## I. *Introduction*

Tyler Water was convicted of second-degree murder in the United States District Court for the District of South Dakota for the shooting death of his friend Jeno Chief ("Chief"). Tyler Water argues on appeal that the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence to show malice, which is an element of second-degree murder. Tyler Water also appeals the admission of hearsay evidence. Finally, Tyler Water appeals an obstruction of justice enhancement under U.S.S.G. § 3C1.1. The government cross-

appeals and argues that the district court improperly granted a two point decrease in offense level based on acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. For the following reasons, the judgment of the district court is affirmed.

## II. *Background*

A group of young people gathered for a party at House 33, Northridge Housing Development, Pine Ridge, South Dakota. The residents of House 33 included Tyler Water and several of his family members. Tyler Water's brother, Garrett Water, did not reside at House 33, but stayed "here and there." Others who attended the party lived next door at House 32 owned by Rita Running Shield. Rita's twin sons, Wes and Les Running Shield, and daughter, Jessica Running Shield, along with Jessica Running Shield's son, Terrence, all lived at House 32. Chief dated Jessica Running Shield and was Terrence's father. Chief and Tyler Water were best friends, and Chief was also staying at the Water residence. The party began in the Water basement bedroom about 9:00 p.m. Tyler Water arrived about 10:00 p.m. During the course of the evening, the group smoked marijuana and consumed alcohol in substantial quantities.

Earlier in the day, Garrett Water acquired a .22 caliber revolver and ammunition. At the party, Garrett Water, and others including Chief and Tyler Water fired the weapon for amusement. After the group consumed about a case of beer, Garrett Water allowed Tyler Water to handle the revolver. Tyler Water opened the revolver and replaced two live rounds that fell out. According to Garrett Water, Tyler Water sprang the barrel and removed all the bullets, which Garrett Water placed in his pocket where they remained for the evening. Tyler Water continued to play with the empty revolver—pointing it around but not pulling the trigger. Tyler Water even

held the revolver to his own head and mouth and pretended as if he was going to pull the trigger.

Eventually, Chief and Tyler Water decided to scare Jessica Running Shield by making it look as if the revolver was loaded. They took empty bullet casings and put the spent casings in the revolver so that it would appear loaded. According to Jessica Running Shield, Tyler Water put one bullet in the chamber and spun it "while it was laying out." Tyler Water closed the revolver, pointed it, and pulled the trigger. Garrett Water thought the joke scared Jessica Running Shield, but she was not frightened. In any event, Chief was laughing and pointing the revolver at Jessica Running Shield, clicking the trigger. Jessica Running Shield testified that Tyler Water put in two shells, one at a time, spinning the cylinder and clicking the trigger. She did not know if the bullets he put in were live bullets or spent.

Chief and Tyler Water also started teasing others by pointing the revolver at each other. Tyler Water pointed it at Chief's head and Chief pointed it back at Tyler Water's head, while they both were "laughing around." Eventually, some people wearied of the "fun" and decided to leave the party. Those who stayed included Jessica Running Shield, Tyler Water, Chief, and Garrett Water. All who remained continued to play with and handle the revolver. Chief and Tyler Water left the bedroom and were standing near the laundry area talking and drinking with Garrett Water. Jessica Running Shield briefly joined Chief, Tyler Water, and Garrett Water outside the bedroom before going next door, leaving Garrett Water, Chief, and Tyler Water drinking in the basement of House 33. Chief continued the reckless recreation of pointing the revolver in jest at Tyler Water and also himself. Tyler Water then took the revolver from Chief and repeated the now routine ritual of pointing the revolver toward himself and Chief. Unfortunately, this time when Tyler Water pulled the

-3-

trigger three times in succession, the revolver dry fired twice and fatally shot Chief on the third click.

After the revolver discharged, Tyler Water ran next door to House 32 and was described at trial as upset, crying, in shock, and apologetic. Tyler Water then gave the revolver to Wes Running Shield, who said he would get rid of it or hide it. Tyler Water then took off running into the hills.

An Oglala Sioux Tribe ("OST") Emergency Medical Team ("EMT") unit arrived first on the scene. OST paramedic James Atchinson testified that someone drove up and reported the shooting to the OST dispatcher, and the ambulance responded. OST Police Officer Tony Long Soldier ("Officer Long Soldier") arrived next. Then Bureau of Indian Affairs ("BIA") Officer Fred Bennett III ("Officer Bennett") arrived. Garrett Water, who was at the scene when police arrived, spoke with Officer Long Soldier and Officer Bennett.

Officer Bennett interviewed Tyler Water the afternoon following the shooting. Tyler Water told him that he constantly checked the revolver to make sure it was unloaded. According to Officer Bennett, Tyler Water stated that Chief had some bullets in his pocket and called Tyler Water into the laundry room while Chief loaded the revolver. Officer Bennett did not ask whether Tyler Water realized there were live rounds in the revolver. However, Tyler Water explained that he did not mean for the revolver to discharge and that he did not intend to harm Chief. Tyler Water assisted in the retrieving of the gun and was subsequently charged with second-degree murder.

At trial, Officer Long Soldier testified that Garrett Water stated that Tyler Water had placed a live round in the revolver and then shot Chief. Tyler Water's hearsay objections to these statements were overruled. At the close of the government's evidence and at the close of all the evidence, Tyler Water moved for acquittal, arguing that the government's evidence was insufficient to show malice, a necessary element of second-degree murder. The district court denied both motions. The jury convicted Tyler Water of second-degree murder. At sentencing, the district court granted the government's motion for an obstruction of justice enhancement under U.S.S.G. § 3C1.1 based upon Tyler Water's attempts to conceal the revolver. The district court sentenced Tyler Water to 147 months' incarceration and five years supervised release. The district court then granted his request for a two-level acceptance of responsibility decrease under U.S.S.G. § 3E1.1. This appeal followed.

## III. *Discussion*
### A. *Motion for Judgment of Acquittal*

Tyler Water's first argument on appeal is that the district court did not apply the correct legal standard in evaluating his motion for directed verdict and motion for judgment of acquittal. The denial of a motion for judgment of acquittal is reviewed de novo. *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004). Rule 29 of the Federal Rules of Criminal Procedure provides that:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

In reviewing the sufficiency of the evidence on appeal, we "view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir. 1992). Criminal "conviction[s] may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt." *Id.* We will uphold the conviction against a challenge to the sufficiency of the evidence unless a reasonable factfinder would have entertained a reasonable doubt about the government's proof of one of the offense's essential elements. *United States v. French,* 88 F.3d 686, 687–88 (8th Cir. 1996); *see also Jackson v. Virginia,* 443 U.S. 307, 317 (1979). This standard applies even when the conviction rests entirely on circumstantial evidence. *United States v. Wilcox,* 50 F.3d 600, 602–03 (8th Cir. 1995).

In determining the strength of the evidence in a circumstantial case, "it is the totality of the circumstances that must be weighed in making a decision on a motion for acquittal." *United States v. Kelton,* 519 F.2d 366, 367 (8th Cir. 1975). If the government's evidence "is equally strong to infer innocence . . . as to infer guilt, the verdict must be one of not guilty and the court has a duty to direct an acquittal." *United States v. Kelton,* 446 F.2d 669, 671 (8th Cir. 1971); *see also United States v. Davis*, 103 F.3d 660, 667 (8th Cir. 1996). If all of the evidence "rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." *United States v. Burks,* 934 F.2d 148, 151 (8th Cir. 1991); *see also United States v. Baker*, 98 F.3d 330, 338 (8th Cir. 1996); *United States v. Bolzer*, 367 F.3d 1032, 1035 n.1 (8th Cir. 2004) (reconciling *Davis* and *Baker*, reasoning that *Davis* refers to the government's evidence, while *Baker* refers to all of the evidence).

At the close of the government's case, Tyler Water moved for judgment of acquittal and argued that the government failed to show malice. In denying the motion, the district court determined:

In reviewing the evidence in the light most favorable to the nonmoving party, which would be the government, there has been evidence that if the jury chooses to believe that evidence would be sufficient to find malice aforethought, namely, the testimony of Garrett Water that he saw Tyler load the gun, put it to the victim's head, and fire it three times until a bullet finally killed . . . Chief. The other elements are not in dispute, so I deny the defendant's motion for judgment of acquittal.

The district court again denied the motion on the same grounds at the conclusion of all the evidence.

Tyler Water argues that the district court should have granted the motion because the prosecution's evidence is as consistent with innocence as with guilt, and no jury could have reasonably inferred from the prosecution's evidence that Tyler Water knew the revolver was loaded. We reject this argument. The government was not required to prove knowledge or intent to establish the element of malice, as "[m]alice does not require proof of a subjective intent to kill." *United States v. Black Elk*, 579 F.2d 49, 51 (8th Cir. 1978). It "may be established by evidence of conduct which is 'reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm.'" *Id.* (citation omitted).

The evidence presented at trial was sufficient for the jury to infer that Tyler Water's handling of the revolver was reckless, wanton, and a gross deviation from a reasonable standard of care. The district court's denial of the motion for judgment of acquittal, even though based on slightly different grounds, is affirmed. *See Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990) (we may affirm a judgment on any ground supported by the record even if not relied upon by the district court).

## B. *Garrett Water's Hearsay Statements*

On appeal, Tyler Water seeks reversal of the admission of Officer Long Soldier's testimony regarding Garrett Water's statements at the scene of the crime. At trial, the district court overruled Tyler Water's objection but did not discuss the application of the excited utterance exception. In response, the government asserts that the excited utterance exception applies and allows admission of Garrett Water's out-of-court statements. We agree.

An out-of-court statement made by a witness, but offered in evidence to prove the truth of the matter asserted is hearsay. *See* FED. R. EVID. 801. Hearsay statements are generally inadmissible, however, there are several exceptions to this rule, including one for excited utterances. *See* FED. R. EVID. 802 and 803(2). The excited utterance hearsay exception recognizes that statements relating to a startling event made while under the stress of excitement caused by the event are likely to be truthful because the stress from the event caused a spontaneous statement that was not the product of reflection and deliberation. *See* FED. R. EVID. 803(2); *see also Reed v. Thalacker,* 198 F.3d 1058, 1061 (8th Cir. 1999).

To determine whether Garrett Water was under the stress of excitement when he made these statements, we consider "the lapse of time between the startling event and the statements, whether the statements were made in response to an inquiry, his age, the characteristics of the event, his physical and mental condition, and the subject matter of the statements." *United States v. Marrowbone*, 211 F.3d 452, 454 (8th Cir. 2000) (citing *United States v. Moses,* 15 F.3d 774, 777–78 (8th Cir. 1994)). The government has the burden of demonstrating that the exception is applicable. *Id.* (citing *Reed,* 198 F.3d at 1061). We review the district court's evidentiary ruling for abuse of discretion. *Id.* (citing *United States v. Phelps,* 168 F.3d 1048, 1054 (8th Cir. 1999)).

Tyler Water does not dispute that the excited utterance exception applies, but instead argues that we are precluded from evaluating the excited utterance factors on appeal because the trial court failed to do so. In *Marrowbone*, upon which Tyler Water relies, the trial court also made no specific findings to support the use of the excited utterance exception. *Marrowbone*, 211 F.3d at 454–55. However, we reviewed the excited utterance factors and ruled that the exception did not apply because the government failed to demonstrate on appeal continuous excitement or stress from the time of the event until the time of the statement. *Id.* at 455. As a result, we ruled that the district court abused its discretion in admitting the statement. *Id.*

Here, the government met its burden of demonstrating that the excited utterance exception applies. The time between the shooting and when Garrett Water made the statement was less than five minutes. Thus, the likelihood of the statement being a product of reflection and deliberation is low. Moreover, Officer Long Soldier arrived at the Water residence approximately one minute after he was dispatched. Officer Long Soldier immediately went down into the basement of the house where the shooting occurred. Soon thereafter, he encountered Garrett Water, and observed his demeanor as excited, nervous, and fidgety. While Officer Long Soldier observed that Garrett Water was intoxicated, there was nothing in his demeanor or the circumstances to indicate he had a motive to lie. The district court did not abuse its discretion in admitting the hearsay statements.

C. *Acceptance of Responsibility Decrease*

The government cross-appeals the district court's downward adjustment for acceptance of responsibility[1] essentially arguing that Tyler Water should not qualify because he took the case to trial. We disagree. Although Tyler Water had the burden to prove acceptance of responsibility, the district court was within its discretion to

---

[1]U.S.S.G. § 3E1.1(a) provides for a two-level decrease in offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."

find that Tyler Water qualified for the reduction. *United States v. Lublin,* 981 F.2d 367, 370 (8th Cir. 1992). We review the district court's sentence under the guidelines for unreasonableness. *United States v. Booker*, 125 S. Ct. 738, 767 (2005). "The determination of the district court is given great deference on review and should not be disturbed unless it is without foundation, as the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. app. n.5.

In this case, the district court found the following: (1) Tyler Water admitted to causing Chief's injuries, and thus the only fact in dispute was whether he possessed the necessary malice to commit second-degree murder; (2) Tyler Water assisted law enforcement in finding the weapon, which led to the revolver being surrendered without having to obtain a search warrant; (3) once Tyler Water was charged, he turned himself in; and (4) during closing arguments, Tyler Water's attorney advised the jury that he wanted to accept responsibility and didn't think that he should get off for everything that he was charged with. The district court ruled that under these

facts, the two-level decrease for acceptance of responsibility applied.[2] We affirm the two-level downward adjustment.

### D. *Obstruction of Justice Enhancement*

Finally, Tyler Water argues that the district court erred in applying a two-level enhancement for obstuction of justice under U.S.S.G. § 3C1.1, which requires a two-level adjustment if, as relevant, "the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." In this circuit, the obstructive conduct must occur after an official investigation begins. *United States v. Stolba*, 357 F.3d 850, 852 (8th Cir. 2004). We review the imposition of this enhancement for clear error. *United States v. Orchard*, 332 F.3d 1133, 1138 (8th Cir. 2003).

---

[2]In *United States v. Big Crow*, 898 F.2d 1326, 1330 (8th Cir. 1990), we affirmed the acceptance of responsibility decrease, noting that the district court had the benefit of personal observation of the defendant's conduct during the trial. *Id.* We reasoned that while the defendant could not remember the exact details of the incident, he admitted that his conduct caused the assault and injuries to the victim. *Id.* Moreover, the defendant "acknowledged that his excessive drinking caused him to lose control of his behavior, that his behavior was wrong, and that he was responsible for the consequences." *Id.* We found that adequate foundation supported the district court's determination. *Id.* The government argues that this case is closely analogous to *United States v. Makes Room for Three*, 49 F.3d 410, 417 (8th Cir. 1995), where we affirmed the denial of an acceptance of responsibility decrease. *Id.* at 416. We held that the fact that the defendant insisted on a trial does not preclude the reduction, but the fact that the defendant consistently denied the required mens rea did preclude the application of the reduction. *Id.* In so ruling, we relied upon *Big Crow* and held that "the sentencing court is entitled to broad deference[,]" which "counsels against reversal." *Makes Room for Three*, 49 F.3d at 416 n.3. The government's argument in this case, as did the defendant's in *Makes Room for Three*, "fails to take the standard of review into account." *Id.*

During the sentencing hearing, Tyler Water agreed that concealing the weapon from law enforcement supported the enhancement. However, he contended that his obstructive conduct occurred before the official investigation began. At the sentencing hearing, Officer Bennett testified that Tyler Water told him he gave the revolver to Wes Running Shield to hide and that he also told Wes Running Shield to call the police. Officer Bennett also testified that Wes Running Shield confirmed that Tyler Water requested that he hide the weapon, which he did. However, Officer Bennett testified that according to Wes Running Shield, Tyler Water gave him the weapon after the police were already next door investigating the shooting.

Tyler Water argued that admittance of Wes Running Shield's hearsay statements would violate his Sixth Amendment Confrontation Rights and the district court agreed. However, the court ruled that because Chief was still alive when the 911 call was made, the call was made immediately after the shooting occurred. The court reasoned that any conversation that Wes Running Shield had with Tyler Water would have occurred after the phone call was made.

For the first time in this appeal, Tyler Water argues that an obstruction of justice enhancement could not be based upon judge-found facts, citing *Blakely v. Washington*, 124 S. Ct. 2531 (2004). He is partially correct. Recently in *Booker*, the Supreme Court held that *Blakely* does indeed apply to the Guidelines. *Booker*, 125 S. Ct. at 756. However, the Court's remedy was not to invalidate the Guidelines completely or make impermissible all judge-found facts, but instead to render the Guidelines effectively advisory rather than mandatory. *Id*. at 767. For those defendants sentenced under a mandatory guidelines scheme, remand is required if "normal prudential" doctrines so demand. *Id*. at 769. Because Tyler Water did not raise this argument during sentencing, we will not remand for resentencing unless he demonstrates plain error. *United States v. Pirani*, 406 F.3d 543, 560 (8th Cir. 2005). Under this standard, Tyler Water must show not only that the district court erred but also that the error was plain and affected his substantial rights. *Id*. To do so, Tyler

Water must show a "reasonable probability based on the appellate record, as a whole, that but for the error he would have received a more favorable sentence." *Id.* at 552 (internal quotations omitted). The record before us does not support such a showing. The district court's 147-month sentence is not unreasonable. We therefore affirm the judgment of the district court.

_____