# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3573

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Melvin Troy Two Shields, | * | |
| | * | |
| Defendant/Appellant. | * | |

_____

Submitted: March 13, 2007
Filed: August 14, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Melvin Troy Two Shields appeals his convictions for second-degree murder and assault resulting in serious bodily injury, the denial of his motion for a new trial, and his sentence to concurrent terms of 360 and 120 months' imprisonment. We affirm the judgment of the district court.[1]

On the afternoon of January 21, 2006, Two Shields was drinking vodka with several other people at a trailer home in Fort Yates, North Dakota, on the Standing

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

Rock Indian Reservation. He drank heavily, and the police were called to remove him from the residence. An officer picked up Two Shields and drove him to the Sioux Village area of Fort Yates. The officer dropped Two Shields off near a duplex where Two Shields's brother and his uncle, Thomas Buffalo Boy, lived in adjacent units.

Two Shields went into Buffalo Boy's residence, where Buffalo Boy was drinking whiskey with Arthur Silk and April Callous Leg. According to Silk and Callous Leg, Two Shields helped himself to their whiskey and provoked an altercation in which he choked Silk and threatened Callous Leg. Silk and Callous Leg took their whiskey and left Buffalo Boy's home, leaving Two Shields alone with Buffalo Boy, who was sitting quietly in a chair when they departed.

That evening, Buffalo Boy showed up at his sister Roselyn's house bleeding from his mouth into a cup, his jaw badly swollen. Roselyn repeatedly asked Buffalo Boy what had happened, but he was unable to answer. Roselyn called the police and requested an ambulance. At Buffalo Boy's home, the responding officer found blood on the floor and furniture and Two Shields lying unconscious on the floor. The officer smelled alcohol on Two Shields, and Two Shields appeared to be intoxicated, so the officer arrested him for violating the conditions of his supervised release by consuming alcohol.

The emergency medical technicians who transported Buffalo Boy to the hospital observed that blood was coming from his mouth, the left side of his face was very swollen, and his jaw was broken. In the ambulance, Buffalo Boy was conscious but unable to communicate clearly. The emergency room doctor found that Buffalo Boy's speech was unintelligible, but he could nod his head. While Buffalo Boy's facial injuries were severe, the rest of his body did not appear to be harmed. He had a blood alcohol level of 0.389, almost five times the legal limit for driving in North Dakota.

Buffalo Boy's facial injuries caused swelling around his airway, so doctors performed a tracheostomy to help him breathe. He was admitted to the intensive care unit in stable condition after the procedure but began to have trouble breathing and died early in the morning on January 22. His autopsy showed that he suffered from lung and heart-related conditions and cirrhosis, but the stated cause of death was complications of blunt-force injuries to his face.

In a police interview, Two Shields at first denied any knowledge of how Buffalo Boy was injured but eventually stated that he had hit Buffalo Boy several times but did not mean to kill him. A grand jury indicted Two Shields for second-degree murder within Indian Country, in violation of 18 U.S.C. §§ 1111 and 1153, and for assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6), 1153, and 2.

The government filed a motion in limine to exclude as hearsay potentially exculpatory evidence that Buffalo Boy had denied that Two Shields attacked him. The evidence at issue was a statement by Buffalo Boy's sister-in-law that, while visiting Buffalo Boy in the hospital, she asked him if he knew who had caused his injuries, and he nodded. She asked if it was Two Shields, and Buffalo Boy shook his head no. Her daughter was also present, and she felt that Buffalo Boy did not really respond to the question but "kind of" shook his head. The sister-in-law asked if Buffalo Boy was protecting Two Shields, his nephew, but he did not respond. Later, Buffalo Boy's niece visited the hospital and asked Buffalo Boy who had hurt him. He did not answer, nor did he respond when she listed several individuals' names and asked if each was involved. Two Shields opposed the motion in limine, invoking several exceptions to the hearsay rule.

The district court excluded the evidence as hearsay, Fed. R. Evid. 802, concluding that none of the exceptions to the hearsay rule applied. The case proceeded to trial, where Two Shields testified that he did not remember going to

Buffalo Boy's house on January 21 and that police had pressured him to give a false confession. Nonetheless, the jury convicted him on both counts. The court denied his motion for a new trial and sentenced him to 360 months' imprisonment on the murder count and 120 months on the assault count, with terms to run concurrently. Two Shields filed this appeal.

First, Two Shields challenges the district court's exclusion of the evidence that Buffalo Boy shook his head in the negative when asked whether Two Shields was his attacker. We review a district court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict. United States v. Cannon, 475 F.3d 1013, 1023 (8th Cir. 2007). Two Shields argues that the district court should have admitted the evidence under the dying declaration, statement against interest, or residual exceptions to the hearsay rule. It was Two Shields's burden, as the proponent of the evidence, to establish that these exceptions applied. See United States v. Turning Bear, 357 F.3d 730, 738 (8th Cir. 2004).

Under Fed. R. Evid. 804(b)(2), "a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death," may be admitted in a homicide prosecution where the declarant is unavailable to testify. The district court concluded that this exception did not apply because there was no evidence that Buffalo Boy believed his death was imminent when he shook his head in response to the question of whether Two Shields was his attacker.

In arguing that Buffalo Boy must have believed his death was imminent, Two Shields points to the severity of Buffalo Boy's wounds. A declarant's serious injuries can support an inference that he believed death was imminent, see United States v. Peppers, 302 F.3d 120, 137 (3d Cir. 2002), but the nature and extent of the injuries must be so severe that "obviously . . . [the declarant] must have felt or known that he

-4-

could not survive." Mattox v. United States, 146 U.S. 140, 151 (1892). Buffalo Boy's medical condition does not support an inference that he believed his death was imminent. His injuries, though severe, were limited to his face and were not life-threatening in nature; no doctor had diagnosed them as life-threatening, and everyone expected him to survive. Buffalo Boy never otherwise indicated that he believed he would die. Under these circumstances, the dying declaration exception does not apply. See United States v. Lawrence, 349 F.3d 109, 117 (3d Cir. 2003) (identification of attacker not a dying declaration because there was no evidence declarant believed death was imminent where everyone expected him to survive and no one had told him he was going to die); see also United States v. Tompkins, 487 F.2d 146, 149 (8th Cir. 1973) (dying declaration exception not applicable where there was "no express testimony indicating that the decedent had lost all hope of recovery or that he knew death was near and certain"). The district court did not abuse its discretion in refusing to admit the hearsay statement as a dying declaration.

Two Shields also invokes the statement against interest exception, under which a hearsay statement of an unavailable declarant is admissible if it was "so far contrary to the declarant's pecuniary or proprietary interest" or tended "to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed. R. Evid. 804(b)(3). Two Shields argues that Buffalo Boy's head shake qualifies as a statement against interest because, by denying that Two Shields was his attacker, Buffalo Boy rendered invalid any civil claim he might have had against Two Shields for assault and battery, contrary to Buffalo Boy's pecuniary interests. The district court rejected this theory, concluding that medical evidence showed that Buffalo Boy was highly intoxicated and unable to recall simple facts like his age, such that he could not have been able to appreciate that the statement was against his interest. Two Shields does not point to any contrary evidence that would show Buffalo Boy was aware he potentially had any sort of claim against Two Shields. Thus, the district

court did not abuse its discretion by refusing to admit the statement under this exception.

Third, Two Shields invokes the residual exception to the hearsay rule, which applies in exceptional circumstances to allow a court to admit a hearsay statement that has "circumstantial guarantees of trustworthiness" and meets the other requirements of Fed. R. Evid. 807. United States v. W.B., 452 F.3d 1002, 1005-06 (8th Cir. 2006). The question in this case is whether Buffalo Boy's head shake had circumstantial guarantees of trustworthiness, and trustworthiness is analyzed under a broad totality of the circumstances test. United States v. Barrett, 8 F.3d 1296, 1300 (8th Cir. 1993). The district court concluded that Buffalo Boy's head shake did not exhibit circumstantial guarantees of trustworthiness, because of Buffalo Boy's high blood alcohol concentration, his statements to his sister and emergency medical technicians that he did not recall how he was injured, doctors' notes stating that he was incoherent, the leading nature of his sister-in-law's question, and the ambiguous nature of his head gesture, which could have been a head shake or a meaningless movement in light of the two witnesses' somewhat conflicting interpretations.

Two Shields argues that circumstantial guarantees of trustworthiness were present because Buffalo Boy was a crime victim with a natural desire for revenge that would make him unlikely to falsely deny that Two Shields was his attacker. As the government points out, that the statement was made by the victim of the crime does not accord it any special trustworthiness under the hearsay rules. Moreover, other motives may countervail against a desire for revenge where the individuals are related, as in this case where Two Shields was Buffalo Boy's nephew. Even if Buffalo Boy had a motive to accurately identify his attacker's identity, the testimony of his relatives, emergency medical technicians, and doctors all suggest that he was not thinking or communicating clearly, and the meaning of his head movement was ambiguous. Two Shields further argues that Buffalo Boy's sister-in-law presumed he was the attacker and thus she would be unlikely to testify to the head shake unless

Buffalo Boy truly denied Two Shields was involved. This argument goes to the credibility of the sister-in-law, not to the trustworthiness of Buffalo Boy's statement. See United States v. Atkins, 558 F.2d 133, 135 (3d Cir. 1977) (trustworthiness of declarant's statement, not credibility of person who witnessed the statement, is the focus of inquiry in applying residual exception). The district court identified several cogent reasons why Buffalo Boy's head shake did not have circumstantial guarantees of trustworthiness, and it did not abuse its discretion in refusing to admit the evidence under the residual exception to the hearsay rule.

Next, Two Shields challenges the district court's denial of his motion for a new trial. We review a district court's decision on a new trial motion for abuse of discretion, reversing only where the district court has clearly abused its discretion such that a miscarriage of justice may have occurred. United States v. Shepard, 462 F.3d 847, 871 (8th Cir.), cert. denied, 127 S. Ct. 838 (2006).

Two Shields argues that the district court clearly abused its discretion by concluding that Buffalo Boy's intoxication diminished the trustworthiness of his statement for purposes of the residual exception to the hearsay rule. Two Shields points to cases where courts have admitted statements through the excited utterance exception to the hearsay rule even though the declarants were intoxicated. See, e.g., United States v. Water, 413 F.3d 812, 818 (8th Cir. 2005) (witness's statement to police five minutes after shooting was admissible through excited utterance exception to hearsay rule where, although witness was intoxicated, he had no motive to lie); United States v. Marrowbone, 211 F.3d 452, 454-55 (8th Cir. 2000) (teenager's statement that defendant got him drunk and molested him was hearsay not admissible as an excited utterance, but admission of the statement was harmless error). Marrowbone does not support Two Shields's argument because the court did not speak on the significance of the declarant's intoxication to its analysis, and in Water the court merely treated the declarant's intoxication as one consideration that was outweighed by other circumstances suggesting his statement was reliable. Moreover,

the district court in this case applied no per se rule that a declarant's extreme intoxication automatically renders his statement untrustworthy. Rather, the court found the statement lacked guarantees of trustworthiness for additional reasons including Buffalo Boy's incoherence and nonresponsiveness to other questions, the leading nature of the sister-in-law's question, as well as Buffalo Boy's lack of memory. The court was unsure whether Buffalo Boy's head movement was even intended as a response to the question. See Lawrence, 349 F.3d at 117 (declarant's blinks and nods allegedly made in response to a photo array were too ambiguous to constitute a meaningful statement for purposes of residual exception to hearsay rule). The district court acted entirely within its discretion in treating Buffalo Boy's extreme intoxication as one consideration in the totality of the circumstances, and a new trial is not warranted on this basis.

Two Shields also argues that the district court should have let the jury decide whether Buffalo Boy's intoxication was so severe as to render his head shake untrustworthy and whether his injuries were so serious as to place him in fear of imminent death. In effect, he challenges the district court's determination of the admissibility of evidence. We reject this allegation of error; the record shows that the district court acted properly in its role in applying the hearsay rule and analyzing its exceptions. Fed. R. Evid. 104(a).

Finally, Two Shields appeals his sentence. We review sentences for reasonableness, and a sentence within the correctly calculated Guidelines range is presumptively reasonable. United States v. Cain, 487 F.3d 1108, 1114 (8th Cir. 2007); see also Rita v. United States, 127 S. Ct. 2456, 2462 (2007) (affirming that Courts of Appeals may apply this presumption). A defendant may overcome this presumption if the district court failed to consider a relevant factor that should have received significant weight, gave significant weight to an improper or irrelevant factor, or weighed appropriate factors in a clearly erroneous way. Cain, 487 F.3d at 1114 (citing United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005)).

The presentence report calculated Two Shields's Guidelines range at 292 to 365 months, and the district court sentenced him at the upper end of that range on the murder conviction, to 360 months. Two Shields does not argue that his Guidelines range was incorrectly calculated. Rather, he argues that his sentence fails to allow for disparity between individuals who committed second-degree murder in "a tragic, mindless, drunken act," as the district court characterized his crime, and those who murder with a greater degree of actual intent. Two Shields contends that the facts of his case dictate a narrower range of choice within the Guidelines range, citing United States v. Saenz, 428 F.3d 1159, 1164-65 (8th Cir. 2005), and that his sentence should have been at the low end of the range.

Two Shields's argument does not overcome the presumption of reasonableness that we afford to a sentence within the Guidelines range, and thus we affirm his sentence. Saenz is inapposite because it involved a sentence well outside the applicable Guidelines range, 428 F.3d at 1161. Two Shields's sentence was within the Guidelines range, and that range was fashioned taking into account the factors set forth at 18 U.S.C. § 3553(a). See United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006); see also Rita, 127 S. Ct. at 2464. One of those factors is the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6). In addition, the court observed that Two Shields has a long history of alcohol-related offenses and that the sentence was designed to deter further crimes, protect the public, promote respect for the law, and provide just punishment. The district court considered the relevant factors and gave them an appropriate weight, and Two Shields's sentence is reasonable.

We affirm Two Shields's convictions and sentence.

_____