# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2356

_____

United States of America

*Plaintiff - Appellee*

v.

Brian Gordon Graves

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: March 13, 2014
Filed: June 25, 2014

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury convicted Brian Gordon Graves of Assault with a Dangerous Weapon and Domestic Assault by an Habitual Offender. At the trial and over Graves' objections, the district court[1] permitted the government to introduce, as an excited

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

utterance under Federal Rule of Evidence 803(2), statements the alleged victim made to a police officer on the night of the incident. Graves now appeals his conviction, arguing the district court abused its discretion in admitting the statements as an excited utterance because the alleged victim was not under the stress of the incident at the time she made the statements. We affirm.

I.

Graves and his fiancée L.K. were involved in an all-day argument. At some point during the day, Graves left their shared residence. He returned between 10:00 p.m. and 11:00 p.m., kicked in the front door, and confronted L.K. in the back bedroom of the home. During this confrontation, Graves held a loaded shotgun. After 10 to 15 minutes of arguing, Graves left the residence. As he departed, he fired the shotgun five times.

A neighbor called 911 to report the gun shots. Officer Dana Lyons responded. It took Officer Lyons approximately 20 minutes to travel to the residence after being dispatched.[2] When he arrived, he knocked on the front door, and L.K. answered. Officer Lyons observed that L.K. was shaking and appeared to have been crying. Officer Lyons told L.K. that there had been a report of shots being fired and asked, "What's going on here?" L.K. responded by recalling the details of the fight she had with Graves, including the fact that Graves had pointed the shotgun at L.K. and threatened to shoot her in the head.

Graves was taken into custody. Several days later, he was interviewed by an agent with the Federal Bureau of Investigation where he described the argument he

---

[2]According to the trial transcript, the 911 call began at 10:55 p.m., Officer Lyons was dispatched at 11:06 p.m., and Officer Lyons arrived at the residence at about 11:24 p.m. (Trial Tr. at 16-18.)

had with L.K., admitted taking the gun into the residence and waving it around, and stated that L.K. had pushed the barrel of the gun away. Graves denied, however, that he ever pointed the gun directly at L.K. or threatened to shoot her.

The government argued that L.K.'s statements to Officer Lyons, made immediately after Officer Lyons encountered L.K., should be admitted as an excited utterance. At an evidentiary hearing, Officer Lyons testified about the night of the incident, stating that he arrived at the residence approximately 30 minutes after the 911 call and that L.K. was shaking when she answered the door. Officer Lyons asked, "What's going on here?" In response, L.K. gave a rapid description of the incident including the statements that Graves had pointed the gun at her and threatened to shoot her. At trial, L.K. testified that she lied to Officer Lyons when she stated that Graves had pointed a gun at her and threatened her.

The district court admitted L.K.'s statements made to Officer Lyons immediately after his arrival at the residence as an excited utterance pursuant to Federal Rule of Evidence 803(2), noting that L.K. was still under the stress of the incident and lacked time for reflection. Despite L.K.'s testimony that she lied to Officer Lyons because she was angry at Graves, the jury found Graves guilty of Assault with a Dangerous Weapon and Domestic Assault by an Habitual Offender. The district court sentenced Graves to 21 months imprisonment.

II.

The sole issue in this appeal is whether the district court abused its discretion in allowing into evidence as an excited utterance L.K.'s statements made to Officer Lyons immediately after Officer Lyons arrived at the residence. See United States v. Jongewaard, 567 F.3d 336, 343 (8th Cir. 2009) (standard of review). Hearsay—an out of court statement offered in evidence to prove the truth of the matter asserted—is generally not admissible. See Fed. R. Evid. 801, 802. "Excited utterances" are

excepted from the general rule against hearsay.  See United States v. Bercier, 506 F.3d 625, 630 (8th Cir. 2007) ("Rule 803(2) excepts [from the hearsay rule] an out-of-court statement 'relating to a startling event or condition made while the declarant was under the stress of excitement' caused by the event or condition." (quoting Fed. R. Evid. 803(2))).  "The rationale behind this particular exception 'derives from the teaching of experience that the stress of nervous excitement or physical shock stills the reflective faculties, thus removing an impediment to truthfulness.'" Brunsting v. Lutsen Mtns. Corp., 601 F.3d 813, 817 (8th Cir. 2010) (quoting United States v. Sewell, 90 F.3d 326, 327 (8th Cir. 1996)).  In other words, statements made by a declarant while that declarant remains under the stress or shock of an event retains a "'guarantee of trustworthiness'" that is not present when the declarant has the opportunity for reflection and deliberation.  Id. (quoting Miller v. Keating, 754 F.2d 507, 510 (3d Cir. 1985)).

Graves does not contest that L.K. experienced a startling event or that L.K.'s statements related to that incident.  Instead, Graves argues that L.K. was no longer "under the stress of excitement" caused by the event or condition, and thus her statements to Officer Lyons are not admissible under the "excited utterance" exception to the hearsay rule.  See Fed. R. Evid. 803(2).

To decide the specific question of whether a declarant remains "under the stress of excitement" caused by the event when the declarant makes the statement, courts consider several factors:  "[1] the lapse of time between the startling event and the statement, [2] whether the statement was made in response to an inquiry, [3] the age of the declarant, [4] the physical and mental condition of the declarant, [5] the characteristics of the event, and [6] the subject matter of the statement." United States v. Clemmons, 461 F.3d 1057, 1061 (8th Cir. 2006) (quotation marks omitted).  Courts also consider "whether the declarant's stress or excitement was continuous from the time of the event until the time of the statements." United States v. Wilcox, 487 F.3d 1163, 1170 (8th Cir. 2007) (citing United States v. Marrowbone, 211 F.3d

-4-

452, 455 (8th Cir. 2000)). None of these factors is dispositive, and some of the factors may not be relevant in every case. See United States v. Iron Shell, 633 F.2d 77, 85-86 (8th Cir. 1980).

Outside the presence of the jury, the district court heard testimony from Officer Lyons about his encounter with L.K. After hearing that testimony and arguments from counsel, the district court held that the statements L.K. made to Officer Lyons were not subject to reflection by L.K. because she did not make the call to the police and, thus, was not aware during the approximately 30 minutes from the incident to Officer Lyons' arrival that she was going to be subjected to questioning from a police officer.

In looking at the factors noted above, first the lapse of time in this case—approximately 30 minutes—is seemingly long for the typical application of the excited utterance exception; however, we have previously allowed the inclusion of excited utterances in a similar factual scenario. In United States v. Phelps, a victim's boyfriend fired five or six shots in the victim's presence shortly after an argument between the two. 168 F.3d 1048, 1052 (8th Cir. 1999). A police officer arrived on the scene 15 to 30 minutes after the incident. Id. at 1053. When the officer made contact with the victim, the victim appeared "very upset," "[h]er hands were shaking," and "she . . . [was] crying." Id. We stated that "[t]he lapse of 15 to 30 minutes between an exciting incident and a statement d[id] not render the statement inadmissible." Id. at 1055. We held the district court did not abuse its discretion in admitting the statements as an excited utterance because the victim's statements "occurred only shortly after an exciting event, were made while she was still visibly upset from the shooting, and described the shooting." Id. Additionally, Phelps cited Iron Shell, 633 F.2d at 86, where we allowed admission of statements made between 45 minutes and 1 hour 15 minutes after an assault. 168 F.3d at 1055. Thus, the time lapse of 30 minutes was not so long to render L.K.'s statements inadmissible.

Second, Officer Lyons testified that L.K. was shaking and appeared to have been crying when she answered the door immediately before giving the statements. L.K.'s state of distress before she gave her statements supports a finding that L.K.'s statements were "spontaneous, excited or impulsive rather than the product of reflection and deliberation." Iron Shell, 633 F.2d at 86. Although L.K., who recanted her statements at trial, offered a different explanation for her appearance—that she was subject to hormonal issues pertaining to her pregnancy—the district court acted well within its discretion to find that her "continuous level of stress" from the time of the incident until Officer Lyons appeared supported the application of the excited utterance exception.

Third, L.K. offered her statements to Officer Lyons in response to his general inquiry into what had happened. This question was not the detailed, interrogation-style questioning that might negate the use of the excited utterance exception. See, e.g., United States v. Elem, 845 F.2d 170, 174 (8th Cir. 1988) (holding statements made by defendant while defendant was in custody and in response to officers' several questions did not qualify for excited utterance exception).

Finally, L.K.'s statements described the argument with Graves, including his placing the gun to her head and threatening to shoot her. The characteristics of such an interaction are the type of event that would cause a reasonable person to experience the type of stress and shock L.K. exhibited.

While Graves may offer alternative explanations for L.K.'s appearance and behavior, those explanations do not undermine the district court's exercise of its discretion in determining that L.K.'s statements bore a "guarantee of trustworthiness" and were not subject to reflection and deliberation. Accordingly, we affirm the district court's admission of the statements as an excited utterance under Federal Rule of Evidence 803(2).

III.

We affirm.

_____