# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3353
_____

United States of America

*Plaintiff - Appellee*

v.

Lester E. Brown

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 25, 2024
Filed: November 25, 2024
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury found Lester Brown guilty of conspiracy to commit cyberstalking, cyberstalking resulting in death, and being a felon in possession of a firearm. The district court[1] sentenced Brown to life plus 180 months' imprisonment. On appeal,

---

[1]The Honorable David Gregory Kays, United States District Court for the Western District of Missouri.

Brown challenges several of the district court's evidentiary rulings. He further argues that the evidence was insufficient to support two of his convictions. Finding no reversible error, we affirm.

## I.

Brown dealt marijuana in the Kansas City area. In 2013, Brown traveled to Arizona with two of his associates—Christopher Harris and Ryan Cobbins. When Harris and Cobbins returned from Arizona, they told their friend, Antwon Tolefree, "[n]ot to ever deal with [Brown] no more." Later in the year, Cobbins suddenly disappeared. Brown told Harris and Tolefree that his cousin "had" Cobbins. In exchange for Cobbins's return, Harris paid Brown a large sum of cash. Nevertheless, Cobbins was never to be heard from again as he was later found murdered. Upon learning of Cobbins's death, Harris stopped dealing marijuana and moved to California. However, at some point, Harris returned to the Kansas City area and resumed selling marijuana with Tolefree.

In February 2018, Tolefree and Harris unexpectedly ran into Brown at a mall. Brown approached Harris, and the two spoke for a bit before Brown left. A short time later, Brown returned and told Harris to call him because the number that Harris had given him earlier was incorrect. Brown subsequently sent Tolefree and Harris "threatening" messages over Snapchat. One Snapchat message told Harris that, if he didn't pay $10,000, he would "end up" like Cobbins. In a message to Tolefree, Brown included a picture of a tracking device. Brown also asked his cousin, Michael Young, to search for Tolefree's address on his cellphone and to do a drive-by to look for Tolefree's car. In addition, Brown wrote the license plate number of Harris's girlfriend in Young's phone.

Suspecting that Brown was tracking them, Harris and Tolefree took their family members' vehicles to auto shops to search for tracking devices. Harris also stopped going to stores and hired Tolefree's grandfather to be his driver. He told a friend, Victor McVea, that he was worried that "people [were] trying to kill him,"

and that he "was just going through a situation [involving] a friend" with "some low-grade weed from Arizona."

Later, Brown purchased two tracking devices from a company called SpyTec. Brown activated one of the devices at his residence on March 11, 2018, and attached it to Harris's car. Between March 12 and 14, the device was tracked to places frequented by Harris—his mother's house, his daughter's dance studio, his daughter's residence, and Tolefree's house.

On March 14, Brown asked his cousins Ronnell Pearson and Young to "go bust a move." Brown drove Pearson and Young to a dance studio, where Brown pointed out Harris's car in the parking lot. The trio then drove to an apartment complex. While waiting at the apartment complex, Brown and Young used their phones to track Harris's movements. When Brown and Young saw that Harris was getting close to their location, the trio pulled out of the apartment complex and followed Harris to a residential neighborhood. Harris was driving his eight year old daughter to her mother's house after a dance class. Once Harris pulled into the driveway, the trio pulled up behind him. Brown and Young exited the vehicle, while Pearson remained in the car.

One of the men asked Harris, "What's that shit you was talking, cuz?" Harris pleaded, "I've got my daughter with me, I've got my daughter with me." The man responded, "I ain't trying to get her. I don't give a fuck." Gunshots then rang out. Harris's daughter ran into her mother's house screaming, "They're shooting at my daddy. Mommy. Mommy, somebody's shooting at my daddy." Harris attempted to follow his daughter into the house, but he was shot twice in the head and died on scene. Pearson heard the gunshots but did not see who shot Harris. Brown and Young reentered the vehicle, and Brown drove away. Young told Brown, "it wasn't supposed to go that way."

Police officers examining the murder scene located an active electronic tracking device with a visible fingerprint on the underside of Harris's car. A forensic

examiner concluded that the fingerprint belonged to Brown. The tracking device was determined to have been purchased by Brown from SpyTec.

A grand jury indicted Brown for conspiracy to commit cyberstalking, 18 U.S.C. § 371; cyberstalking resulting in death, *id.* §§ 2261A, 2261(b); and being a felon in possession of a firearm, *id.* §§ 922(g)(1), 924(a)(2). While in pretrial detention, Brown openly bragged to others that he had killed Harris and that he should have killed Harris's daughter as well. He also obtained a cellphone, which he used to call his "girls" and "homeboys." Brown asked his "homeboys" to kill one of the detectives on his case. Following a five-day trial, a jury found Brown guilty on all counts. The district court sentenced Brown to life plus 180 months' imprisonment.

## II.

On appeal, Brown asserts that the district court erred when it admitted certain testimony as well as evidence of his prior wrongful conduct. He also asserts that there was insufficient evidence to convict him of conspiracy to commit cyberstalking as well as cyberstalking resulting in death. We address each claim in turn.

### A.

Brown contends that the district court erroneously admitted hearsay even though no hearsay exception applied. Specifically, Brown takes issue with the following statements: (1) Harris's statement to McVea that "people [were] trying to kill him"; (2) Harris's statement to McVea that he "was just going through a situation [involving] a friend" with "some low-grade weed from Arizona"; (3) Harris's statement to Tolefree "[n]ot to ever deal with [Brown] no more"; (4) Brown's Snapchat message to Harris that, if he didn't pay $10,000, he would "end up" like Cobbins; and (5) Tolefree's testimony that he and Harris discussed the "threatening" messages they received from Brown. Because Brown properly objected to the district court's consideration of these statements as hearsay, we review for an abuse

of discretion.  *See United States v. Angeles-Moctezuma*, 927 F.3d 1033, 1036 (8th Cir. 2019).

Hearsay is an out of court statement offered to prove the truth of the matter asserted.  *United States v. Graves*, 756 F.3d 602, 604 (8th Cir. 2014) (citing Fed. R. Evid. 801, 802).  Hearsay is generally inadmissible as evidence because it is unreliable and not subject to cross-examination in court.  *United States v. Thomas*, 451 F.3d 543, 547 (8th Cir. 2006); Fed. R. Evid. 801 advisory committee's notes to proposed rules.  However, the Federal Rules of Evidence provide exceptions to admit hearsay under certain circumstances based "upon the theory that under appropriate circumstances a hearsay statement may possess [sufficient] circumstantial guarantees of trustworthiness."  Fed. R. Evid. 803 advisory committee's notes to proposed rules.  One such exception is Federal Rule of Evidence 803(3)'s state of mind exception.  Under this exception, hearsay is admissible when the declarant makes a statement regarding his or her current mental or physical condition, sensation, emotion, thought, or plan.  Fed. R. Evid. 803(3). The exception does not apply to statements regarding past mental or physical conditions.  *Id.*  Here, McVea testified that Harris made contested statements (1) and (2)—that Harris feared "people [were] trying to kill him," and that he "was just going through a situation [involving] a friend" with "some low-grade weed from Arizona." These two statements clearly refer to Harris's then current thought and mental condition.  Harris was not referring to a past mental thought or condition.  Rather, Harris's statements refer to then present events.  Thus, (1) and (2) are admissible under Rule 803(3)'s state of mind exception.

Certain statements are not hearsay because they are not offered for their truth. *See Thomas*, 451 F.3d at 548.  Statements that are commands generally fall within this category.  *Id.*  Harris's statement to Tolefree "[n]ot to ever deal with [Brown] no more" is a command that was not offered for its truth.  *See United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) (describing the statement "[b]ring me some heroin" as a command).  Indeed, Harris's statement does "not

assert a proposition that could be true or false." *Id.* Thus, Harris's statement to Tolefree is not hearsay.

The Federal Rules of Evidence expressly provide that some statements are not hearsay. *See* Fed. R. Evid. 801(d). Statements by an opposing party in an individual or representative capacity fall within this category when they are offered against that opposing party. Fed. R. Evid. 801(d)(2)(A). Here, statement (4) concerns Snapchat messages made by Brown himself, and the Government offered Brown's statements against him. Thus, Brown's Snapchat messages are not hearsay.

Lastly, even if the district court improperly admits hearsay evidence, we will not reverse the district court's evidentiary ruling if it is harmless error. *See United States v. Marrowbone*, 211 F.3d 452, 455 (8th Cir. 2000). "An erroneous evidentiary ruling does not [a]ffect a substantial right and is harmless error if, after reviewing the entire record, we determine that the error did not influence or had only a slight influence on the verdict." *Id.* Even assuming (5)—Tolefree's testimony that he and Harris discussed the "threatening" messages they received from Brown—constitutes inadmissible hearsay, we conclude that its admission did not sway the jury. *See id.* (holding that the district court's admission of hearsay testimony was harmless error because the testimony "did not substantially sway the jury"). It is inconsequential that Tolefree and Harris discussed the threatening messages they received from Brown, especially given that the *content* of Brown's messages is independently admissible as statements by an opposing party.

Accordingly, we conclude that the district court did not abuse its discretion in admitting the five statements into evidence.

B.

Brown asserts that the district court erroneously admitted evidence of his prior wrongful conduct, including evidence that he was involved in Cobbins's murder and that he dealt marijuana with Harris. He argues that this evidence is inadmissible

under Federal Rules of Evidence 404(b) and 403. Because Brown filed a motion *in limine* to exclude the evidence on these bases, which the district court denied, we review for an abuse of discretion. *See United States v. Flenoid*, 415 F.3d 974, 976 (8th Cir. 2005).

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b) applies only to "extrinsic" evidence. *United States v. Mink*, 9 F.4th 590, 607 (8th Cir. 2021). It does not apply to evidence that is "intrinsic" to the charged offense. *Id.* Extrinsic evidence "is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *United States v. Murry*, 31 F.4th 1274, 1291 (10th Cir. 2022). On the other hand, evidence is intrinsic "when it is offered for the purpose of providing the context in which the charged crime occurred." *Mink*, 9 F.4th at 607. "Intrinsic evidence need not be *necessary* to the jury's understanding of the issues to be admissible." *United States v. Guzman*, 926 F.3d 991, 1000 (8th Cir. 2019) (internal quotation marks omitted). Indeed, intrinsic evidence is only inadmissible "if such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *Id.*

Here, Brown's prior wrongful conduct unquestionably completes the story of the charged crimes. *See Mink*, 9 F.4th at 607 (stating that intrinsic evidence is admissible because it "completes the story or provides a total picture of the charged crime"). Evidence pertaining to Brown and Harris's past drug dealings provides context as to why Brown threatened and stalked Harris. And evidence pertaining to Cobbins's murder provides context as to why Harris reasonably felt threatened by Brown, which is an element of the cyberstalking resulting in death offense. Without knowing who Cobbins was and what happened to him, a threat that Harris would "end up" like Cobbins would have no significance for a jury. Thus, Brown's prior wrongful conduct is intrinsic evidence, and Rule 404(b) is inapplicable.

As to Rule 403, it provides that a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Brown asserts that the probative value of his prior wrongful conduct is substantially outweighed by the danger of unfair prejudice. But Brown does not identify any unfair prejudice resulting from the admission of his prior wrongful acts. And, as discussed previously, the evidence has great probative value as it completes the story of the charged crimes. Therefore, we conclude that the district court did not abuse its discretion in admitting Brown's prior wrongful conduct.

C.

Finally, Brown argues that the evidence was insufficient to convict him of conspiracy to commit cyberstalking or cyberstalking resulting in death. We review sufficiency of the evidence challenges *de novo*, "viewing the evidence and the jury's credibility determinations in the light most favorable to its verdict and reversing only if no reasonable jury could have found [the defendant] guilty." *United States v. Obi*, 25 F.4th 574, 577 (8th Cir. 2022).

To prove Brown guilty of conspiracy to commit cyberstalking, the Government had to show that (i) "two parties entered into an agreement or reached an understanding to commit [cyberstalking]" and (ii) "at least one of the parties overtly acted in furtherance of the agreement." *United States v. Anderson*, 783 F.3d 727, 749 (8th Cir. 2015); *see* 18 U.S.C. § 371. Brown argues that he cannot be convicted of conspiracy to commit cyberstalking because both Pearson and Young testified that they did not know that Brown would kill Harris. But Brown was not charged with conspiracy to commit cyberstalking resulting in death. Rather, he was charged with conspiracy to commit cyberstalking, and there existed sufficient evidence that Brown conspired with Young to commit cyberstalking. For instance, Pearson testified that Brown and Young tracked Harris on their phones the day that Harris was killed. He also testified that Brown and Young followed Harris to the

daughter's residence. Moreover, Young testified that, at Brown's behest, he searched for Tolefree's address on his phone and drove by that address looking for Tolefree's car. Thus, a jury could reasonably infer that an agreement or an understanding to cyberstalk Harris existed between Brown and Young, and that Brown took overt acts in furtherance of that agreement or understanding. We therefore conclude that there was sufficient evidence to convict Brown of conspiracy to commit cyberstalking.

To prove Brown guilty of cyberstalking resulting in death, the Government had to show that Brown, (i) "with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person," (ii) "use[d] the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that" (iii) "place[d] that person in reasonable fear of . . . death . . . or serious bodily injury," or "cause[d], attempt[ed] to cause, or would be reasonably expected to cause substantial emotion distress to [that] person," and (iv) that the person died as a result. 18 U.S.C. §§ 2261A(2), 2261(b)(1). We conclude that a jury could reasonably conclude that all four elements were met. As to (i), the requisite intent can be inferred from Brown's numerous threats against Harris over Snapchat. As to (ii), Brown placed electronic trackers on Harris's car and sent him threatening messages over Snapchat. As to (iii), Harris told others that he feared for his life and searched family members' cars for tracking devices. And, as to (iv), the Government presented evidence that, on March 14, 2018, Brown stalked Harris using a tracking device and ultimately killed him. Thus, the evidence was sufficient to support Brown's conviction.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____