Cite as 2025 Ark. 186

# SUPREME COURT OF ARKANSAS
No. CR-24-797

| | | |
|---|---|---|
| KEVASIA TATE | | **Opinion Delivered:** November 20, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-22-193] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CHARLES E. CLAWSON, JUDGE |
| | APPELLEE | |
| | | <u>AFFIRMED</u>. |

## BARBARA W. WEBB, Justice

Kevasia Tate was convicted in a Faulkner County jury trial of one count of capital murder and two counts of aggravated assault. His convictions were enhanced because he employed a firearm in the commission of the offenses. Tate received a life sentence without the possibility of parole for his capital-murder conviction, two concurrent five-year sentences for the aggravated-assault convictions, and a ten-year consecutive sentence for the firearm enhancement, all to be served in the Arkansas Division of Correction. On appeal, Tate challenges six evidentiary rulings.

### I. *General Facts*

Because Tate does not challenge the sufficiency of the evidence, only a brief summary of the facts is necessary. On February 26, 2022, Tate and Tyrius Harris arrived at a house at the corner of Garland and Neal Streets in Conway where friends had gathered to drink and

play dice. An argument ensued between Tate and David Hood that resulted in Tate leaving the party. However, before he left, Tate threatened to "come up and air this bitch out." Hood told the other partygoers that he needed a gun and subsequently armed himself. Meanwhile, Shamika Little told everyone at the party they had to leave because Tate and Harris said they were coming back to "shoot the house up."

Marketus Lowe, a friend of Hood's who was present at the party, called his friend Antonio Smith and asked for a ride home because the situation made him feel uneasy. Lowe was waiting outside when he saw Tate and Harris return to the house in a light-colored Mustang with the headlights off. Hood came out of the house, and Lowe ran back inside and watched through a window.

Tate and Harris left the party at 1:49 a.m. and returned at 1:53 a.m. Harris was armed with a 9mm Glock, and Tate was armed with a .40-caliber pistol that was equipped with a "switch" that turned the pistol into a machine gun.

After parking the Mustang, Tate and Harris got out and started walking down Neal Street. Hood exited the house and raised his arm at Tate and Harris. A gunfight ensued during which Hood was hit by three bullets. One of the bullets struck his iliac artery, which ultimately caused him to bleed out. He died five hours later. After the shooting, Tate and Harris returned to the Mustang and drove away. Some of the partygoers loaded Hood's body into the back seat of a car and attempted to drive him to the hospital. However, they were involved in an accident at the corner of Front and Oak Streets.

At the scene of the shooting, officers found a 9mm Taurus G2C firearm, which was determined to be Hood's, lying in the middle of the road. In and beside the road, police

2

discovered thirty-four 9mm shell casings and eleven .40-caliber shell casings; thirty-one 9mm shell casings were determined to have been fired from the Glock 19 used by Harris, and the other three were fired by Hood. The .40-caliber casings were located in a ditch that was Tate's firing position.

Antonio Smith arrived at the scene with his two-year-old daughter during the gunfight. He told officers that his car had been shot, and police found eleven bullet holes in Smith's car. One of the bullets that hit Smith's car passed through the front window, struck the steering wheel, and then hit the front-passenger headrest, where it stopped and fragmented. That bullet's trajectory indicated that the bullet would have struck the child's car seat in the rear-passenger seat if it had not stopped in the front-passenger headrest.

The State nolle prossed the enhancement of committing these crimes in the presence of a child, but Tate was convicted of the remaining charges. He timely filed a notice of appeal.

## II. *Standard of Review*

We review a circuit court's decision regarding the admission of evidence for an abuse of discretion. *Beard v. State*, 2020 Ark. 62, 594 S.W.3d 29. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the court act improvidently, thoughtlessly, or without due consideration. *Id*. However, an abuse of discretion is established when the circuit court erroneously interprets or incorrectly applies the law. *Lowery v. State*, 2019 Ark. 332, 586 S.W.3d 644; *McClanahan v. State*, 2010 Ark. 39, 358 S.W.3d 900; *Reeves v. State*, 374 Ark. 415, 288 S.W.3d 577 (2008).

Nonetheless, an appellate court will not reverse a circuit court's evidentiary ruling absent a showing of prejudice. *Beard, supra.* Unless an appellant can demonstrate prejudice from an evidentiary ruling, we will not reverse, as prejudice is not presumed. *Taffner v. State,* 2018 Ark. 99, 541S.W.3d 430.

### III. *Evidentiary Rulings Challenged on Appeal*

Tate argues that the circuit court abused its discretion in six evidentiary rulings. We note however that in challenging each of these rulings, he only makes a general assert that he was prejudiced. We will provide the context for each allegation of error.

Because the first four evidentiary rulings involve hearsay objections, we are mindful that hearsay is a statement made by an out-of-court declarant that is repeated in court by a witness and is offered into evidence for the truth of the matter asserted. *Clemons v. State,* 2010 Ark. 337, 369 S.W.3d 710; *Bowen v. State,* 322 Ark. 483, 911 S.W.2d 555 (1995). Accordingly, much of the testimony objected to arguably was not offered for the truth of the matter asserted, and thus would not be hearsay.

We are mindful that the concurring justice seeks more abbreviated analysis of the hearsay issues. However, the concurring justice's reliance on *United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006), is not sound. First, it is not an decision of the Arkansas Supreme Court, so, it is, at the most, merely persuasive authority. Second, the proposition that it cites *Thomas* for, is merely dicta. The hearsay argument in *Thomas* arose in relation to Thomas's aiding and abetting his girlfriend, Tracy Savage, in a scheme to defraud a bank. *Id.* The Government alleged that the scheme involved Thomas selling his house to Savage at an inflated value and her attempt to defraud the bank by filing a false loan application. *Id.*

4

As part of its proof, the Government offered into evidence the bank's conversation log, in which its employees recorded the substance of conversations that they had with customers about pending loans. *Id*. Thomas conceded that the chat logs themselves were admissible under the business records exception to the hearsay rule. *Id*. The *Thomas* court concluded that the substance of the inquiries was not offered for the truth of their content, but to allow the jury to infer that Savage's repeated inquiries related to her knowledge that the loan was fraudulent. *Id*. After further stating---and holding---that the content of Ms. Savage's inquiries were not hearsay, the *Thomas* court notes that Thomas's objection was not effective to raise the issue. *Id*. Only then did it state that "Questions and commands generally are not intended as assertions, and therefore cannot constitute hearsay." *Id*. The *Thomas* court does not even go so far as to describe in detail that the chat log entries, so to what extent they were even "questions and commands," is left to speculation. *Id*.

A. Hearsay in Marketus Lowe's Testimony

Tate lists two separate allegations of evidentiary errors that occurred during the direct examination of Marketus Lowe. First, in response to a question by the State regarding statements made by Tate, Lowe, somewhat nonresponsively, stated that after Tate left the party, Hood "was like, hey, man, give me a gun." Tate made a hearsay objection, which the State defended as a "present-sense impression." The circuit court overruled the objection.

When the trial continued, the State directly inquired about what Hood said as Tate and Harris were leaving. Lowe answered, "He didn't say nothing. He just looked at 'em, and they left. And then he looked around and said man, I need a gun. And he said you got

a gun? I said no. I don't have one. So he [asked] everybody. He went in the back room, and he come back, and he had one."

Later, during Lowe's testimony, the State returned to this line of questioning. The State inquired, "Do you know why he got a firearm?" This drew an objection from Tate, asserting that it called for speculation. The State offered to rephrase, instead asking "what he heard [Hood] say." Tate again raised a hearsay objection, and the circuit court made the same ruling. This initiated a somewhat muddled exchange:

MR. HOUT:        I'm rephrasing the question.

THE COURT:       Well, how are we going to rephrase it?

MR. HOUT:        I'm going to ask him what he heard, and what he saw David---David do, and what he heard David say.

MR. CLIFFORD:    Objection to the hearsay on what David was saying.

THE COURT:       Same ruling on that. Alright rephrase.

(WHEREUPON, back in open court)

Q.               So after Kevasia Tate said I'll be back, What did David do at that point in time?

A.               He didn't do anything right then. He just watched 'em go out the door.

Q.               After that, did he do something?

A.               Yeah. He [asked] for a gun.

Q.               He asked for a gun. And do you know if he actually got a gun?

A.               Yes, sir.

Tate argues that the circuit court erred in admitting the hearsay. He asserts that under Arkansas Rule of Evidence 803(1), a present-sense impression is a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. Accordingly, Tate argues, the statements could not possibly be characterized as describing some event while Hood was perceiving the event because there was no event that was described. While we agree that Lowe's testimony was not a present-sense impression, we nonetheless conclude that the circuit court did not err in admitting Hood's statements.

When a statement is offered to show a course of conduct or the basis of action, it should not be excluded under Rule 801(c). *Bliss v. State*, 282 Ark. 315, 668 S.W.2d 936 (1984); *Jackson v. State*, 274 Ark. 317, 624 S.W.2d 437 (1981). Here, to the extent that Hood's request for a gun was hearsay at all, it was offered conceivably as part of the *res geste*. The testimony was elicited to show the basis for Hood's action. Furthermore, Tate does not specify how he was prejudiced by this ruling. It was undisputed at trial that Hood was armed at the time that Tate opened fire on him. We are further mindful that Tate raised self-defense at trial. Accordingly, even assuming that this ruling was error, Tate has failed to demonstrate prejudice. *See Taffner, supra.* We affirm the circuit court.

### B. Hearsay in Angela Marshall's Testimony

Party guest Angela Marshall was called to testify by the State. Tate had argued at a pretrial hearing that Marshall's testimony would be replete with hearsay. In response, the State submitted its belief that any of the statements Marshall heard and would be repeating would constitute an exception to hearsay The State argued that it would lay the proper

foundation and that her testimony would fall into the exceptions for present-sense impressions and excited utterances. The circuit court noted the testimony would be allowed if those particular statements fell under a hearsay exception and that they would just have to "wait and see." During Marshall's direct testimony, she began to relate that Shamika Little told everyone to get out of the house. Tate made a hearsay objection. Before the circuit court ruled on the objection, the State asked Marshall to describe Little's demeanor, and Marshall testified that Little was scared and screaming at everyone to get out of the house. She opined that Little was clearly acting under the stress of the situation. The circuit court then overruled Tate's objection.

On appeal, Tate argues that this ruling is erroneous because Marshall's testimony was offered for the sole purpose of proving the truth of the events on the day in question, which is what Marshall was describing to the jury while testifying. This argument is not persuasive. Marshall's testimony about Little's reaction to Tate's threat was an excited utterance.

An excited utterance is a statement relating to a startling event made while the declarant is under the stress of excitement caused by the event. *Moore v. State*, 317 Ark. 630, 882 S.W.2d 667 (1994). All of the elements for a hearsay exception are present here. The exciting event was Tate's altercation with Hood culminating in Tate's vow to "come up and air this bitch out." Little made this statement shortly after Tate's threat, so Little's ordering everyone out of the house was uttered during the period of excitement. Finally, Little's frantic command was clearly her reaction to Tate's threat. Accordingly, the circuit court did not err by overruling Tate's hearsay objection.

## C. Hearsay in Officer Whitley's Testimony

Conway Police Officer Keith Whitley likewise provided statements attributed to Shamika Little. Officer Whitley testified that while he was responding to the shooting, he was diverted to an automobile accident that turned out to be the car in which Hood was being taken to the hospital. At the accident scene, he found a wrecked car, and Little was standing next to it. He described Little as upset, and he began to testify about what she said to him. The prosecutor cut him off to lay a foundation for his testimony. Officer Whitley described Little's body language as "frantic." He further recalled that her voice was loud and that she seemed scared. These observations led Officer Whitley to believe she was still under the stress of whatever it was that she had seen. The State then asked him what she told him while she was still under the stress of what she had seen. The circuit court summarily overruled Tate's hearsay objection. Officer Whitley testified that as soon as he arrived at the accident scene, Little told him there was a gunshot victim in the back seat. Little opened the door, revealing Hood in the back seat of the car.

On appeal, Tate argues that Officer Whitley's testimony was hearsay and not subject to any exception. We disagree. Like Angela Marshall's testimony, Officer Whitley's description of what Little told him was an excited utterance. *See Moore*, *supra*. Little not only observed that Tate had made good on his threat to return and shoot Hood but had also just been involved in a motor-vehicle accident that occurred while she was trying to take Hood to the hospital. Little's statement that there was a gunshot victim in the car, which is itself a stressful situation, occurred within minutes of the shooting and shortly after the accident. Little's effort to direct Officer Whitley to Hood clearly related to the source of her

9

excitement. We hold that the circuit court did not abuse its discretion in admitting this testimony.

### D. Expert Testimony from Detective Michael Gibbons

Detective Michael Gibbons, who worked with the North Little Rock Police Department and the Bureau of Alcohol, Tobacco, and Firearms, testified as an expert witness in firearms. Because the murder weapon was not recovered, Detective Gibbons's testimony was based on surveillance video that happened to capture the shooting. Tate objected to the State's questions about switches—devices that allow semiautomatic pistols to fire automatically. Tate argued that Detective Gibbons's expertise in switches was irrelevant because video footage was the only evidence from which he could determine whether the gun used to shoot Hood had a switch and that Detective Gibbons was not qualified to testify as an expert in video footage. The circuit court overruled the objection because the State was not trying to qualify Detective Gibbons as a video expert. Detective Gibbons then testified that fully automatic pistols are capable of firing at a rate of ten rounds per second, whereas semiautomatic pistols usually fire one round per second. Based on the fact that eleven .40-caliber shell casings were recovered from the scene of the shooting and only eight-tenths of a second elapsed between the first and the last shots fired by Tate on the video footage, Detective Gibbons concluded that the firearm used by Tate must have been fully automatic.

On appeal, Tate concedes that, under Arkansas Rule of Evidence 703, an expert may rely on facts or data not admissible in evidence if such facts are of a type reasonably relied upon by experts in a particular field in forming opinions upon the subject. Nonetheless, he

10

argues that the circuit court erred in admitting Detective Gibbons's testimony. This argument is not persuasive.

Tate neither cites authority nor makes convincing argument that Detective Gibbons's conclusion that Tate murdered Hood with a fully automatic weapon was in any way infirm. We will not consider an argument when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well-taken. *Hollis v. State*, 346 Ark. 175, 55 S.W.3d 756 (2001); *Dougan v. State*, 330 Ark. 827, 957 S.W.2d 182 (1997); *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996); *Roberts v. State*, 324 Ark. 68, 919 S.W.2d 192 (1996); *Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977). Accordingly, we summarily affirm on this point.

E. Misapplication of Arkansas Rule of Evidence 612

When Conway Police Officer Franciso Joseph was called to testify, Tate's trial counsel observed that Officer Joseph had brought a piece of paper to the witness stand. That observation spawned the following objection:

| | |
|---|---|
| MR. CLIFFORD: | I think Officer Joseph has a piece of paper that he's looking at. It may just be his subpoena, but I don't know if he's going to be testifying off of it or reading off of it. I just ask that he set it aside and that he testify from his memory. I don't know what he's looking at. |
| MR. HOUT: | There's absolutely no rules of evidence that require that. As a matter of fact, a witness can take whatever they want to do to the witness stand. |
| THE COURT: | Especially to refresh your recollection or anything like that. |
| MR. CLIFFORD: | If he needs his memory refreshed, I asked that we just lay the proper foundation to do that. But if he's going |

11

|                |                                                      |
|----------------|------------------------------------------------------|
| THE COURT:     | I'll overrule at this point. I don't see anything objectionable, okay. |

There were no further objections as Officer Joseph testified that he responded to the scene of the shooting where he observed multiple shell casings and a firearm—later determined to be Hood's—in the street. He also testified about finding Antonio Smith and his two-year-old daughter at the scene. The record does not reflect how Officer Joseph used the paper that he brought with him to the witness stand.

On appeal, Tate argues that the entirety of Officer Joseph's testimony was "tainted by this ruling as any testimony provided was impermissibly allowed to come from an undisclosed document that the witness took with him to the witness stand over Tate's objection and without production of the "mystery document." He contends that Rule 612 of the Arkansas Rules of Evidence was violated. Quoting *Dillon v. State*, 317 Ark. 384, 392, 877 S.W.2d 915, 919 (1994), in which this court stated, "A witness may occasionally consult a writing to refresh his memory, but it is his testimony and not the writing which is to be the evidence," and "We do not read this to imply one may read from a transcript which is beyond the bounds of refreshing recollection," Tate asserts that there is some inherent prohibition against Officer Joseph bringing a "piece of paper "with him to the witness stand. We disagree.

In the first place, at trial, Tate based his argument on Rule 612 of the Arkansas Rules of Evidence, which entitles an adverse party to receive a copy of a document used to "refresh" his or her "memory." However, the record reflects that Tate never asked the circuit court to require the State to produce the paper that was in Officer Joseph's possession.

12

Further, Tate failed to show how Officer Joseph used the "piece of paper" at trial, particularly whether the paper was used to refresh Officer Joseph's memory. This omission fatally undercuts his allegation of error. It is the appellant's burden to bring up a record demonstrating error. *Barker v. State*, 2014 Ark. 467, 448 S.W.3d 197. Furthermore, Tate's reliance on *Dillon* is misplaced. Not only are the quoted statements dicta, but also, the *Dillon* court's holding relied on *Sweat v. State*, 307 Ark. 406, 408, 820 S.W.2d 459, 461 (1991), which states:

> This court has repeatedly held that a witness is allowed to refer to writings before or while testifying. In *Goodwin v. State*, 263 Ark. 856, 568 S.W.2d 3 (1978), an arresting officer used notes prepared from his original notes to refresh his memory before testifying. *See also Smith v. State*, 286 Ark. 247, 691 S.W.2d 154 (1985) (where three law enforcement officials used a copy of the defendant's purported confession to refresh their recollection at trial); and *Wilson v. State*, 277 Ark. 43, 639 S.W.2d 45 (1982) (where a sheriff used a statement given by the defendant to refresh his memory while testifying).

Further, the *Sweat* court cited with approval McCormick on Evidence:

> (T)he statement that a witness once refreshed must speak independently of the writing seems too inflexible, and it is believed that the matter is discretionary and that the trial judge may properly permit the witness to consult the memorandum as he speaks, especially where it is so lengthy and detailed that even a fresh memory would be unable to recite all the items unaided.

*Sweat*, 307 Ark. at 409, 820 S.W.2d at 461 (alteration in original) (quoting Edward W. Cleary, *McCormick on Evidence*, § 9, at 21 (3d ed. 1984)).

Thus, on this point, Tate has provided neither a factual nor a legal basis upon which we can conclude that the circuit court abused its discretion in allowing Officer Joseph to

bring a "piece of paper" with him to the witness stand. Accordingly, we affirm on this point as well.

## IV. *Cumulative Error*

As noted previously, Tate does not specify how he was prejudiced with regard to each of the evidentiary rulings that he challenges. He does, however, assert that "the prejudice was compounded" and the "cumulative effect" of the alleged errors significantly impacted the jury's perception of the evidence and the credibility of the witnesses presented by the State. This argument is not preserved for our review. In *Munson v. State,* 331 Ark. 41, 959 S.W.2d 391 (1998), we held that an appellant asserting a cumulative-error argument must show that there were objections to the alleged errors individually and that a cumulative-error objection was made to the trial court and a ruling obtained. The record reflects that Tate did not make a cumulative-error objection at trial and did not obtain a ruling. We therefore will not consider this argument.[1]

## V. *Rule 4-3(a) Review*

In compliance with Arkansas Supreme Court Rule 4-3(a), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Tate. No prejudicial error has been found.

Affirmed.

BAKER, C.J., and HILAND and BRONNI, JJ., concur.

---

[1]The concurring justice's footnote in which he states that he disagrees with *Munson v. State,* 331 Ark. 41, 959 S.W.2d 391 (1998), does not seem to take into account that *Munson* is the law in Arkansas until it is overruled.

**NICHOLAS J. BRONNI, Justice, concurring.** Lawyers and courts frequently misunderstand hearsay. The definition of hearsay is simple enough: it's "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c). Yet lawyers and courts regularly misapply that definition. That's the case here. So I write separately to explain why—contrary to the majority's assumption—the statements that Tate challenges aren't hearsay.[1]

Tate challenges three statements: (1) "hey, man, give me a gun"; (2) "everybody[] get out [of] the house"; and (3) "there [is] a gunshot victim in the back seat." All three statements aren't hearsay, and I'd dispose of Tate's challenges on that ground. Take the statement, "hey, man, give me a gun." That's a request—not an assertion. *See United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006); *United States v. Love*, 706 F.3d 832, 840 (7th Cir. 2013); *United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003); *United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990); *United States v. Deritis*, 137 F.4th 209, 222 (4th Cir. 2025); *Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 330 (3d Cir. 2005); *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990); *United States v. Vest*, 842 F.2d 1319, 1330 (1st Cir. 1988); *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015); *United States v. Jackson*, 88 F.3d 845, 848 (10th Cir. 1996); *United States v. Torres*, 794 F.3d 1053, 1059 (9th Cir. 2015); *United States v. Long*, 905 F.2d 1572, 1579-80 (D.C. Cir. 1990); *see also Proctor v. State*, 349 Ark. 648, 666, 79 S.W.3d 370, 382 (2002) (reaffirming the policy

---

[1]Nor would I join the majority's cumulative error analysis that requires a "cumulative-error objection" at trial for preservation on appeal.

goal of interpreting our rules of evidence to be reasonably consistent with other states and the Federal Rules of Evidence). And it's hard to understand how a statement that doesn't assert anything could have been, as the majority assumes, offered to "prove the truth of the matter asserted." So it's not hearsay. That's equally true of the statement, "everybody[] get out [of] the house." It doesn't assert anything, and as such, it isn't hearsay.

Nor does Tate's objection to the statement that "there [is] a gunshot victim in the back seat" fare any better. Here, at least, there's an assertion: there's a gunshot victim in the back seat. But it's still not hearsay because the statement wasn't offered to prove that there was a gunshot victim in the back seat. Rather, it was offered for a different reason—to explain why Officer Whitley looked in the back seat of the car. Thus, even though it's an assertion, the statement wasn't offered to prove the truth of the matter asserted and, consequently, it isn't hearsay.

Ultimately, the majority makes this case much more complicated than it needs to be. There's no need to rely on exceptions and a lack of prejudice. Instead, the court should simply conclude that the challenged statements aren't hearsay and affirm on that basis. Anything more creates confusion where there's already enough disorder.

HILAND, J., concurs.

*Streit Law Firm, PLLC*, by: *Jonathan R. Streit*, for appellant.

*Tim Griffin*, Att'y Gen., by: *James Hill*, Ass't Att'y Gen., for appellee.